|   |   |
|---|---|
| | **UNITED STATES DISTRICT COURT** |
| | **DISTRICT OF NEVADA** |

| | | |
|---|---|---|
| WILLIAM H. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | 3:06-CV-0198-BES (VPC) |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| JO ANNE BARNHART, | ) | |
| | ) | |
| Defendant. | ) | February 8, 2008 |
| | ) | |

This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal (#9). Defendant opposed and filed a cross motion for affirmance of the commissioner's decision (#12). For the reasons set forth below, the court recommends that plaintiff's motion for reversal (#9) be granted and defendant's cross motion for affirmance of the commissioner's decision (#12) be denied.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff William White ("plaintiff") filed an application for Social Security disability insurance benefits on February 18, 2004 (AR 47-50). Plaintiff alleges disability based on Post Traumatic Stress Disorder ("PTSD"). *Id*. Plaintiff's claim was denied initially (AR 30-32) and on reconsideration (AR 38-40). Plaintiff requested a hearing, and on July 6, 2005, plaintiff testified before Administrative Law Judge ("ALJ"), L. Kalei Fong (AR 219-239 (transcript)). The ALJ found the plaintiff not disabled on September 8, 2005 (AR 15-21). Plaintiff requested administrative review (AR 12), but the Social Security Administration Appeals Council denied review on March 20, 2006 (AR 5-7). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on April 8, 2006 (#1). Plaintiff requests that this court issue an order reversing the decision of the ALJ, and remanding with instructions that the ALJ seek the

advice of a medical expert (#9, p. 6).

## II. BACKGROUND

Plaintiff was born on August 13, 1943, and was sixty-one years old at the time of his hearing (AR 223). Plaintiff completed high school and has one year of college education (AR 18). Plaintiff's last employment was as an "electrician and refrigeration person" in 2000 (AR 223, 225).[1] Plaintiff was in the military from 1965 – 1968 as a combat veteran in the Vietnam War (AR 224). Plaintiff was awarded two purple hearts for his service. *Id*. He alleges that he became disabled on May 1, 2000, due to PTSD (AR 47).

Plaintiff was insured for disability benefits only through March 31, 2002, which date is also referred to as his "date last insured" (AR 18). Plaintiff was required to establish that he was disabled within the meaning of the Social Security Act ("SSA") prior to his date last insured. *Id*. The ALJ found the plaintiff not disabled because he found that there was no medical evidence that the plaintiff suffered from any impairment which significantly limited his ability to perform basic work-related activities prior to March 31, 2002 (AR 20). Specifically, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has the following medically determinable impairment(s): PTSD.

4. The claimant does not have any impairment or impairments that significantly limit the ability to perform basic work-related activities prior to March 31, 2002; therefore, the claimant does not have a "severe" impairment (20 CFR § 404.1520).

5. The claimant was not under a "disability" as defined in the Social Security Act, at any time prior to March 31, 2002

---

[1] Plaintiff also worked for approximately two weeks as an electrician at Cactus Jacks Casino in Carson City subsequent to leaving his job repairing refrigeration units, *see* AR 223, 230, 234, however, the ALJ concluded this did not qualify as substantial gainful activity (AR 21).

- 2 -

1  (20 CFR §§ 404.1520(c)).

2  (AR 21).

### III. STANDARD OF REVIEW

The court must uphold the decision of an administrative law judge if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)*, citing Smolen*, 80 F.3d at 1279. "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

### IV. ANALYSIS

Plaintiff argues that the ALJ had a duty to assist in developing the record, and by failing to call a medical expert to determine the onset date of plaintiff's PTSD, the ALJ committed legal error (#9, p. 4). Defendant's position is that plaintiff had the ultimate burden to prove the onset date of his disability, which he failed to do, and that a disability determination cannot be based solely on plaintiff's subjective symptoms (#12, p. 6).

**A. Law**

Pursuant to the SSA, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Administrative Law Judge considers: (1) whether the person is engaging in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the

- 3 -

1  individual is capable of doing work he or she has done in the past; and (5) whether the
2  impairment prevents the person from doing any other work. *Id.* If at any point in the five-step
3  inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

4  The claimant carries the burden of establishing that he was disabled prior to his last
5  insured date. *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). However, "the ALJ has
6  a duty to develop the record even when the claimant is represented by counsel." *Crane v.*
7  *Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). "In cases of mental impairments, this duty is
8  especially important." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

9  For social security cases, "the critical date is the date of onset of disability, not the date
10 of diagnosis." *Swanson v. Sec. of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985).
11 A plaintiff must establish that he was disabled for at least a twelve-month period between the
12 alleged onset date, and the date his disability insurance lapsed. *Lingenfelter v. Astrue*, 504 F.3d
13 1028, 1034-35 (9th Cir. 2007) (*citing Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) ("To
14 qualify for disability benefits, a claimant must show that a medically determinable physical or
15 mental impairment prevents her from engaging in substantial gainful activity and that the
16 impairment is expected to result in death or to last for a continuous period of at least twelve
17 months.") (*citing* 42 U.S.C. § 423(d)(1)(A) (2004)). Under Social Security Ruling ("SSR") 83-
18 20, the ALJ must use certain guidelines in determining the disability onset date:

> ... the determination of onset involves consideration of the applicant's allegation, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.
> ...
>
> With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be

> needed to reconcile the discrepancy.
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20, 1983 WL 31249, *2-3 (S.S.A.). In this context, the term "should" in the final sentence means "must." *Armstrong v. Commissioner of the Soc. Security Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).[2]

**B. Discussion**

**1. Evidence**

Plaintiff alleges his disability onset date is May 1, 2000, which was his last day of employment (AR 64). Plaintiff's earliest medical record reveals that plaintiff was seen at the Veterans' Administration ("VA") in June 2002 for a cactus thorn in his wrist (AR 146).[3] Plaintiff was again seen in July 2003 for evaluation of a mole on his arm (AR 142-146). During that appointment, plaintiff sought treatment for his PTSD symptoms (AR 135-139). The VA diagnosed plaintiff with PTSD in August 2003 and determined that it was directly related to his military service (AR 51-52). The VA approved plaintiff for fifty-percent benefits, retroactive to November 22, 2002. *Id.*

At his hearing, the plaintiff testified that in the late 1990s, he had an increasingly difficult

---

[2] Social Security Rulings constitute the Social Security Administration's interpretations of the Social Security Act and of its own regulations. *Chavez v. Dept. of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir. 1996). While SSRs do not have the force of law, *see id.*, after publication they are binding precedent upon the ALJ. *Gatliff v. Commissioner of Social Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984) ("Once published, a ruling is binding on all components of the Social Security Administration.... Rulings do not have the force and effect of the law or regulations, but are to be relied upon as precedents in determining other cases where the facts are basically the same.").

[3] Plaintiff's medical records begin on June 11, 2002. At the July 6, 2005 hearing, plaintiff's counsel confirmed that this is the earliest existing record, and that to his knowledge, no other medical records exist (AR 222). Plaintiff testified that he was never treated anywhere other than the VA. *Id.*

time dealing with customers in his electrician/refrigeration job (AR 224-225). Plaintiff testified that he left his job sometime in 2000, after he went on a drinking binge caused by stress and depression (AR 225).[4] Plaintiff further testified that during this time, he was having nightmares each night and was depressed to the point of contemplating suicide (AR 226). Plaintiff testified that his nightmares were "combat related," and that "the worse [sic] ones were the explosions, mortar attacks, things like that" (AR 228). Plaintiff's depression left him feeling as though he could not function and like he was not "worth anything." *Id*.

Plaintiff testified that after he left his job, he became a "vagrant" and was homeless (AR 227). He testified that although he had job skills, he did not have the emotional ability to go out and look for another job. *Id*. Despite continued nightmares between 2000 and 2002, plaintiff did not seek treatment because he says he did not "recognize the source of the problem" (AR 228). Plaintiff testified that while he was living in New Mexico, "begging for food," another veteran told him that he should go back to California for treatment at the VA, which he subsequently did. *Id*. The VA physicians put plaintiff on medication to control his depression (AR 229). Plaintiff testified that the physicians concluded that his depression was caused by his PTSD, which, in turn, resulted from his Vietnam combat experience. *Id*. Plaintiff further testified that the physicians indicated to him that the events which had happened in his life between 2000 and 2002 were caused by his PTSD (AR 230). Plaintiff stated that the PTSD-related problems he currently suffers from are similar to those he had between 2000 and 2002, but that the symptoms are "probably worse now." *Id*. Plaintiff testified that between 2000 and 2002, his depression was severe enough that each week, he would withdraw for days (AR 231-232).

Upon questioning from the ALJ, plaintiff testified that he did not seek treatment for his PTSD symptoms in June 2002, when he was treated at the VA for a cactus thorn in his hand, because he felt it was a "personal problem that [he] didn't want to share" (AR 235). He stated that he avoided treatment all these years because he felt like the problem "was something I should

---

[4] Plaintiff testified, and the evidence indicates, that he quit drinking in 2000 after this binge (AR 237).

- 6 -

be [able] to handle myself, but I always had the problem, one form or another." *Id*.

### 2. Analysis

The ALJ found plaintiff not disabled at Step Two of the five-step evaluation process (AR 18-21). The ALJ held that the plaintiff's allegations of severe impairments prior to March 31, 2002 were "unsubstantiated by the medical evidence of the record" (AR 20). In so holding, the ALJ focused primarily on the fact that plaintiff went to the VA for treatment of a cactus thorn in his wrist in June 2002, "but did not mention any signs of PTSD or any other mental or physical impairment." *Id*. The ALJ found it notable that plaintiff did not seek treatment for his PTSD until July 2003, more than sixteen months after his date last insured. *Id*. The ALJ stated that there is "absolutely no medical evidence" prior to July 2003 to demonstrate that the plaintiff suffered from symptoms of PTSD. *Id*. Acknowledging that plaintiff may have been truthful about having had such symptoms prior to March 31, 2002, the ALJ stated that he was constrained by the rules and could not make a disability finding on plaintiff's subjective symptoms alone. *See* AR 20 (citing to 20 C.F.R. 404.1508) ("An impairment ... must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by the claimant's statement of symptoms.")). The ALJ stated that he could "never find an individual disabled based on symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms" (AR 20).

Plaintiff does not challenge the ALJ's finding that there is no medical evidence in the record to support the plaintiff's claims of disability prior to March 31, 2002. Instead, plaintiff argues that the ALJ had an obligation to call a medical expert to determine the onset date of plaintiff's PTSD (#9, p. 4).

Defendant first argues that while the ALJ must assist in developing the record, the plaintiff had the ultimate burden of proving the disability onset date, which he failed to do (#12, p. 6). The Ninth Circuit has previously rejected this argument:

> If, as the Commissioner argues, an ALJ does not have to call a medical expert unless the claimant has fulfilled his burden of proving an onset date, SSR 83-20 would have no application. If the claimant proved a date, there would be no need to call a

> medical expert, and if the claimant, as in this case, was unable to prove a date, then the ALJ would deny disability benefits because the claimant failed to carry his burden. We refuse to interpret the claimant's burden as eliminating SSR 83-20's requirement. Consequently, we reaffirm this court's previous holding that where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date.

*Armstrong*, 160 F.3d at 590.

The record clearly demonstrates that plaintiff has been diagnosed with PTSD related to his service to this country in the Vietnam War, and he is currently taking a number of medications to control his symptoms (*see generally* AR 114-216). Plaintiff testified that he experienced the same nightmares between 2000 and 2002 as he experiences presently and was experiencing in July 2003, when he was diagnosed.

Citing *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005) and SSR 96-4p, defendant argues that there can be no finding of physical or mental impairment that is based entirely on the subjective symptoms of the claimant (#12, p. 6). Defendant argues that the ALJ need not determine an onset date until he determines that there is a disability, and that it is severe. *Id*. The court reads SSR 96-4p as a guideline to determining whether an individual suffers from an impairment in the first instance. *See* SSR 96-4p, 1996 WL 374187, *1- (S.S.A.). Defendant overlooks the fact that plaintiff already had been diagnosed with a medically determinable mental impairment by the VA at the time he filed his application for benefits. Although the ALJ did note that plaintiff had been diagnosed with PTSD prior to his hearing, the ALJ appears to treat the 2003 diagnosis separately from the time frame between 2000 and 2002.

The court views the relevant issue as being *when* the PTSD originally manifested itself, not whether plaintiff had a separate "case" of PTSD during those earlier years.[5] Importantly, "[r]eports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *see also Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1456, 1461 & n. 5 (9th Cir. 1995) ("Retrospective

---

[5] Considering the nature of plaintiff's mental disorder, it seems unlikely that plaintiff would be suffering from PTSD "on and off" rather than continuously over the years; however, the ALJ is free to explore such a scenario on remand.

diagnoses by treating physicians and medical experts ... and testimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status.").

It is also notable that plaintiff testified that in 2000, after decades of steady work, he abruptly quit his job and went on a drinking binge to combat stress and nightmares related to his experience in the Vietnam war. He subsequently became homeless, and he was begging for food. An individual's mental illness can become apparent in different ways, and can cause an individual to fail to seek help for a number of reasons. The Ninth Circuit has noted that "mental disorders may manifest themselves over a period of time." *Morgan*, 945 F.2d at 1081. Plaintiff testified that he "always had the problem, one form or another," but did not seek help because it was a "personal problem that [he] didn't want to share" and it "was something I should be [able] to handle myself."

SSR 83-20 states that "[i]f reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in the file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation." SSR 83-20, 1993 WL 31249, *3 (S.S.A.). "The ALJ can fulfill this responsibility by calling a medical expert, or where medical testimony is unhelpful, exploring lay evidence including the testimony of family, friends, or former employers to determine the onset date." *Armstrong*, 160 F.3d at 590; *see also* SSR 83-20 (citing same lay evidence sources). Defendants claim that the ALJ's duty to develop further evidence is triggered only when the record is ambiguous, which defendant argues was not the case here because there is a complete absence of medical evidence (#12, p. 8). Although there are no medical records between 2000 and 2002 documenting plaintiff's PTSD, the court does not find a complete absence of evidence – the plaintiff's testimony regarding his nightmares, the fact that he was homeless, the lack of work history since 2000, and the later PTSD diagnosis create an ambiguity as to when plaintiff's PTSD manifested itself, and whether it constituted a disability under the rules.

In this case, the ALJ did not fulfill his duty to expand the record. The ALJ made the inference of onset date in favor of the government without adhering to the requirements of SSR

83-20.  On remand, the ALJ should fully develop the record by calling a medical advisor and/or by receiving testimony from plaintiff's former employer, friends, and family.[6]

## V.  CONCLUSION

Based on the foregoing, the court concludes that it was legal error for the ALJ to fail to call a medical advisor and/or receive testimony from plaintiff's former employer, friends, and family to determine plaintiff's disability onset date pursuant to SSR 83-20.  The court recommends that plaintiff's motion for reversal (#9) be **GRANTED** and defendant's cross motion for affirmance of the commissioner's decision (#12) be **DENIED**.  Plaintiff's case is reversed and remanded for further consideration.

The parties are advised:

1.   Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///
///
///
///
///

---

[6] By this decision, the court does not hold that plaintiff is entitled to benefits.  This court merely holds that the ALJ must expand the record to determine the onset of plaintiff's PTSD.  Should the ALJ conclude that the additional evidence reveals that plaintiff's PTSD did not manifest itself prior to his date last insured, or that plaintiff could have performed substantial gainful activity despite his disability, plaintiff's application for benefits will be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal (#9) be **GRANTED** and defendant's cross motion for affirmance of the commissioner's decision (#12) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's case be reversed and remanded for further consideration.

**DATED**: February 8, 2008.

_____
**UNITED STATES MAGISTRATE JUDGE**